UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. FRED NANCE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 09 C 7733 |
| MICHAEL ROTHWELL, ROGER E. WALKER, ROD | ) | |
| BLAGOJEVICH, MICHAEL SHIELDS, LESLIE | ) | Judge Feinerman |
| BALONICK, JIM CARR, SANDY SMITH, MELINDA | ) | |
| GUBBELS, KYRA PETERS, CHARLES TRUITT, | ) | |
| JERRY BUSCHER, DEANNE BENOS, HENRY | ) | |
| BAYER, JOHN DiNICOLA, each in their individual and | ) | |
| official capacities, ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS, DISTRICT COUNCIL 31 of the | ) | |
| AMERICAN FEDERATION OF STATE, COUNTY, | ) | |
| AND MUNICIPAL EMPLOYEES, AFL-CIO, and | ) | |
| WESTCARE FOUNDATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Fred Nance, Jr., brought this action against WestCare Foundation, Inc.

("WestCare"), the Illinois Department of Corrections ("IDOC"), District Council 31 of the

American Federation of State, County and Municipal Employees ("AFSCME"), and three

groups of individuals.  The first group consists of state officials and employees: Michael

Rothwell, Warden of Sheridan Correctional Center ("SCC"), the IDOC facility where Nance was

assigned to work by WestCare, his employer; Roger Walker, the IDOC Director; Rod

Blagojevich, the Governor of Illinois; Charles Truitt, a security officer at SCC; and Deanne

Benos and Jerry Buscher, both IDOC Assistant Directors.  The second group consists of

WestCare employees: Michael Shields, the Director of Human Resources; Leslie Balonick, the

Midwest Regional Vice President; Jim Carr and Sandy Smith, both Assistant Directors; Kyra Peters, a supervisor; and Melinda Gubbels, a counselor. The third group consists of AFSCME officials: Executive Director Henry Bayer; and John DiNicola, an union agent.

Nance filed suit on December 14, 2009, and filed an amended complaint on April 12, 2010. On April 21, 2010, the court dismissed Nance's amended complaint for failure to comply with Federal Rule of Civil Procedure 8(a) and ordered him to file a second amended complaint. Doc. 48 (Hibbler, J.). The court noted that the amended complaint numbered 606 paragraphs and 104 pages, and warned that if the second amended complaint failed to be "short and plain," as required by Rule 8(a), the case would be dismissed with prejudice. On May 2, 2010, Nance filed a second amended complaint, which weighs in at 277 paragraphs and forty pages. Doc. 52. Nance purports to state claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; the Equal Pay Act, 29 U.S.C. § 206(d); 42 U.S.C. § 1981; 42 U.S.C. § 1983; and Illinois law.

Defendants have moved to dismiss the second amended complaint. The motions filed by Blagojevich and the AFSCME Defendants are granted, while the motions filed by the IDOC Defendants and the WestCare Defendants are granted in part and denied in part.

### Background

The facts alleged in the second amended complaint (Doc. 52) are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The following sets forth the facts as favorably to Nance as permitted by the complaint.

### A.     AFSCME Membership and the June 2006 Strike

In May 2006, Nance, an African-American, was hired by non-party Gateway Foundation, an IDOC vendor retained to provide counseling services to prisoners at SCC. Nance soon was

approached by AFSCME agents who urged him to join the union, but Nance declined.  In mid-May 2006, Nance received a call at his home from AFSCME representative DiNicola, demanding that Nance join the union and wear its "paraphernalia" and threatening retaliation if Nance did not comply.

On June 5, 2006, Nance received a call informing him that AFSCME was going to strike at SCC and that he would not be allowed to cross the picket line.  The strike began on June 6, and IDOC and AFSCME allowed some employees, but not Nance, to cross the line.  Nance wrote a letter to Governor Blagojevich regarding the strike, sent a copy to IDOC Director Walker, and posted it on his blog, http://clickforjusticeandequality.blogspot.com.  On June 14, 2006, Nance reported for work and was told he was not cleared to enter the facility.  Nance asked to speak with Warden Rothwell, who informed him that his security clearance had been revoked.  IDOC Assistant Director Buscher confirmed what Rothwell had said.  The strike ended in early September 2006, and Nance was allowed reentry to SCC.

### B.      Discipline and Harassment Charges Against Nance

AFSCME members intimidated, harassed, and threatened Nance at a September 8, 2006, meeting conducted by a female IDOC officer and an AFSCME member named Breese.  After Nance complained to Breese, Breese falsely accused him of being insubordinate.  Nance filed three IDOC incident reports with SCC complaining of retaliatory acts against him by union members.  Nance filed a similar complaint with the NLRB.

In mid-December 2006, Nance informed his then-supervisor, Jerry Pomush, that he had to work late two nights while other employees had to work late only one night.  Nance filed a grievance with WestCare, which in November 2006 had replaced Gateway as the vendor of counseling services at SCC, alleging discrimination and harassment and seeking protection from

retaliation by Pomush. On January 31, 2007, Pomush intimidated and threatened Nance by investigating another counselor's false claim against him. On February 2, 2007, an inmate told Nance that he had filed a grievance against Nance at Pomush's direction. In response, Nance filed a grievance with WestCare against Pomush.

In August 2007, IDOC officers filed an IDOC incident report against Nance. Nance told WestCare Director Harold Parker that the report was retaliatory. Later that month, Balonick (WestCare's Midwest Regional Vice President) and Carr (a WestCare Assistant Director) told Nance that he would receive a disciplinary write-up for opening another staff person's interoffice mail. Nance's predecessor committed the same transgression, but did not receive a write-up.

On November 8, 2007, Gubbels (a WestCare counselor) and Peters (a WestCare supervisor) filed sexual harassment charges against Nance. A month earlier, Gubbels, an AFSCME member and Nance's subordinate, became insubordinate and disrespectful to Nance. When Nance conducted Gubbels' yearly evaluation on November 2, 2007, Gubbels told him that she would "create a bad environment" for him and to "wait to see what happens to you. You won't be a supervisor here too long[,] remember, none of the union members like you." Doc. 52 at ¶¶ 139-40. After the sexual harassment charges were filed, WestCare refused to give Nance information about them, placed him on paid administrative leave while the allegations were investigated, ordered him to leave SCC immediately, and embarrassingly escorted him out. Nance filed a grievance and sent a letter to Shields, WestCare's Director of Human Resources, claiming that the charges were false and resulted from discrimination.

On November 15, 2007, WestCare Director Stanley Brooks sent Nance an email requesting that he report to work the next day to address the harassment allegations. Brooks informed Nance that Gubbels and Peters would attend the meeting, as would Shields, Carr, and

Brooks. The meeting, which neither Gubbels nor Peters attended, resulted in a finding that the harassment allegations were not substantiated. Gubbels and Peters faced no reprimand for their false accusations, and when Nance requested that Gubbels be transferred to another building, Shields and Balonick refused. In the four months following the harassment allegations, Nance filed many grievances and IDOC reports alleging discrimination and retaliation.

On April 12, 2008, Robin Forsyth, an IDOC correctional officer and AFSCME member, filed a false IDOC incident report against Nance. Because of that report, WestCare transferred Nance to another building where the inmates were more hostile and aggressive.

### C. Interference with Nance's Blog

On January 17, 2007, Nance wrote a letter to AFSCME Director Bayer regarding an allegation of discrimination and retaliation that had been made by others against Isaac McDaniel. Nance posted the letter on his blog. Two days later, SCC security officer Truitt accused Nance of meeting with McDaniel on state property in an effort to impede an ongoing investigation. Truitt interrogated Nance, threatened to take his security clearance, and told him that writing the letter and posting it on his blog interfered with an ongoing investigation and violated an IDOC Administrative Directive. Truitt told Nance that he had been reviewing Nance's blog since June 2006, and stated that if Nance removed the letter and the postings regarding the strike, Truitt would not revoke Nance's security clearance.

### D. Failure of WestCare and IDOC to Investigate Nance's Grievances

On March 16, 2007, Nance filed a grievance with WestCare, and submitted an incident report to IDOC, charging Wendy Mattingly with sexual harassment and defamation. Neither WestCare nor IDOC followed up. Unlike Nance, Mattingly was not placed on leave upon being accused of harassment. On May 28, 2007, Nance filed a grievance with WestCare and Balonick,

citing retaliatory acts by a supervisor. The grievance was not addressed by WestCare or Balonick.

### E.     Failure to Promote

On October 1, 2006, WestCare informed Gateway's employees at SCC that it soon would replace Gateway as the counseling services vendor at SCC, and that all staff members would have to reapply for their positions. On October 14, 2006, Nance applied for an assistant director or supervisor position, a promotion over the counselor position he then held. On November 1, 2006, when WestCare's tenure at SCC commenced, WestCare and AFSCME entered into an agreement to begin the process of unionizing all non-supervisory employees, and WestCare told Nance that he could apply only for a counselor position. Linda Gaston-Rowe, an African-American female, was given a supervisor position. In early December 2006, Nance applied for additional supervisor positions posted by WestCare. One of the positions was awarded to a white female younger than Nance.

Nance was denied promotions: (1) on February 1, 2007, when Mary Gaston received a supervisory position; (2) on February 27, 2007, when younger white employees received supervisor and assistant director positions; (3) on April 10, 2007, when Paul Kubiak, a white male under forty years old and AFSCME's lead representative, was promoted to supervisor; and (4) in late June 2007, when Jim Carr, a white male, was hired as an assistant director. In November 6, 2007, Nance interviewed with Balonick for an assistant director position. Balonick said that Nance's prior grievances would weigh against him, stating, "I cannot have my Assistant Directors complaining about anything around here."

### F.    Termination

On May 9, 2008, there was a disturbance among inmates in the building where Nance worked.  Although Nance alerted the necessary IDOC staff, they "chose to let the inmate incident(s) escalate to a point where [Nance] had to report it to Defendant Balonick through a WestCare official report."  Doc. 52 at ¶ 172.  Afterwards, "IDOC AFSCME personnel/officers told [him] that the email he sent to Defendant Balonick went to IDOC Springfield, and that Defendant Rothwell was pissed off."  *Id.* at ¶ 175.  AFSCME members in Nance's building began to harass, intimidate, and threaten him because of the email.

Nance told Smith and Carr that he was emotionally distressed, and wrote a memo to Brooks detailing the incident.  The same day, Warden Rothwell issued a "Stop Order" memo stating: "Effective immediately and until further notice, WestCare Supervisor Fred Nance has been placed on Administrative Lockout and will not be allowed to enter this facility.  Clearance must be obtained from the Warden … before he may enter the facility."  Doc. 52 at ¶ 179.  Brooks called Nance on May 12, 2008, telling him that he was locked out of SCC and that Brooks had not been given a reason for the lock out.  On May 15, 2008, Nance received a letter from WestCare, stating that he was terminated because he had lost his security clearance.

### G.    EEOC Proceedings and This Lawsuit

In mid-April 2007, while still employed at WestCare, Nance filed an EEOC charge against WestCare and IDOC, alleging race, age, and sex discrimination and retaliation.  The next day, he informed various WestCare employees and Fanti that he had filed charges.  On September 11, 2007, Nance sent the EEOC a letter supplementing his charge, asserting that Balonick instructed supervisors to violate labor laws.  On April 12, 2008, Nance sent the EEOC an email regarding retaliation, to which he attached emails from other supervisory staff.  On May

12, 2008, Nance amended his original EEOC charge and filed a new charge with the EEOC. The amended charge and new charge alleged discrimination and retaliation in violation of Title VII and the ADEA. The EEOC issued right-to-sue letters on both charges on September 23, 2009.

Nance filed this suit on December 14, 2009. The complaint brings fourteen counts: (1) civil conspiracy claim against all Defendants; (2) Title VII hostile work environment claim against IDOC, AFSCME, and WestCare; (3) First and Fourteenth Amendment claims under 42 U.S.C. § 1983 against all Defendants; (4) Fourteenth Amendment equal protection claim against all Defendants; (5) Equal Pay Act wage discrimination claim against IDOC, AFSCME, and WestCare; (6) Equal Pay Act retaliation claim against IDOC, AFSCME, and WestCare; (7) Title VII sex discrimination claim against IDOC, AFSCME, and WestCare; (8) ADEA age discrimination claim against IDOC, AFSCME, and WestCare; (9) Title VII race discrimination claim against IDOC, AFSCME, and WestCare; (10) Title VII retaliation claim against IDOC, AFSCME, and WestCare; (11) race, age, and sex discrimination claims under 42 U.S.C. § 1981 against all Defendants; (12) retaliation claim under 42 U.S.C. § 1981 against all Defendants; (13) intentional infliction of emotional distress claim against all Defendants; and (14) negligence and strict liability claims against IDOC, AFSCME, and WestCare. Nance seeks compensatory damages, punitive damages, and attorney fees; he does not seek declaratory or injunctive relief.

### Discussion

To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation and internal

quotation marks omitted). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks omitted). Because Nance is *pro se*, his complaint is held to less stringent standards. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Although "complaints written by *pro se* litigants are examined under a less arduous standard," a *pro se* plaintiff's "unsupported conclusions of fact and conclusions of law will not defeat an otherwise meritorious motion to dismiss." *Saffold v. Vill. of Schaumburg*, 2009 WL 2601318, at *6 (N.D. Ill. Aug. 24, 2009).

## I. Blagojevich

All claims against Blagojevich are dismissed. The official capacity claims, which like all Nance's claims seek money damages only, are barred by the Eleventh Amendment. *See Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). As for the individual capacity claims, Nance alleges only that he sent letters to Blagojevich regarding the various wrongs being committed against him. Doc. 52 at ¶¶ 39, 46-47, 180. Those allegations do not plausibly show that Blagojevich had any involvement in the wrongful conduct, and thus are insufficient to state a claim. *See Maldonado v. Devine*, 2009 WL 1530706, at *3 (N.D. Ill. May 28, 2009) ("[s]ending a letter to these Defendants is not sufficient to hold them liable"); *McNeil v. O'Leary*, 1993 WL 226289, at *5 (N.D. Ill. June 24, 1993) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982)).

## II. 42 U.S.C. § 1983 Claims

Counts III and IV purport to state First Amendment retaliation and Fourteenth Amendment equal protection claims under 42 U.S.C. § 1983 against all Defendants. The § 1983 claims are dismissed, with the exception of those against Rothwell and WestCare.

### A.    Statute of Limitations

The statute of limitations for § 1983 claims brought in Illinois is two years.  *See Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998).  Because Nance filed this lawsuit on December 17, 2009, claims for misconduct occurring before December 17, 2007, are time-barred.  The following misconduct occurred after December 17, 2007: (1) on April 12, 2008, IDOC officer and AFSCME member Forsyth filed a false IDOC incident report against Nance, and in response WestCare transferred him to another building with more hostile and aggressive inmates; (2) on May 9, 2008, Warden Rothwell issued the "stop order" revoking Nance's security clearance; (3) on May 12, 2008, Nance sent a letter regarding the incident to Blagojevich, Walker, and Benos; (4) on May 12, 2008, Brooks told Nance that he was locked out of SCC; and (5) on May 15, 2008, Nance received the termination letter from WestCare.  Section 1983 claims based on that alleged misconduct are not time-barred.

### B.    IDOC Defendants

Nance cannot maintain a § 1983 claim against IDOC because it is an arm of the State.  *See Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 444 (7th Cir. 2009).  The § 1983 claims against the individual IDOC employees and officials (Rothwell, Walker, Truitt, Buscher, and Benos) in their official capacities are barred as well.  *See Peirick*, 510 F.3d at 695 ("The [Eleventh] Amendment usually bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.").

The complaint does not state a § 1983 claim against four of the IDOC employees in their individual capacities.  A "plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."  *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (citation omitted); *see also Minix v. Canarecci*, 597 F.3d 824, 834

-10-

(7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). Moreover, "a supervisor is not liable for the acts of her subordinates under § 1983 unless she was aware of and approved her employees' conduct." *Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007). Nance's allegations that he addressed letters to Director Walker (Doc. 52 at ¶¶ 39, 46-47, 71, 180) are insufficient to state a § 1983 claim because they provide no basis to conclude that he approved his subordinates' alleged unconstitutional acts. *See Sides*, 496 F.3d at 827; *Maldonado*, 2009 WL 1530706, at *3; *McNeil*, 1993 WL 226289, at *5. Truitt's and Buscher's alleged actions (Doc. 52 at ¶¶ 43-46, 74-85) predate December 17, 2007, so any § 1983 claims against them are time-barred. Benos, who is alleged only to have received a copy of Nance's letter (Doc. 52 at ¶ 180), did not have the requisite personal involvement to support liability under § 1983. Accordingly, the § 1983 claims against Walker, Truitt, Buscher, and Benos are dismissed.

Nance has sufficiently alleged the personal involvement of Warden Rothwell for purposes of § 1983. The complaint alleges that Rothwell issued the stop order that revoked Nance's security clearance and resulted in WestCare's termination of his employment, and that retaliatory animus motivated Rothwell's actions. Doc. 52 at ¶¶ 175, 179, 210-211. This is sufficient to state a claim under § 1983. *See Tamayo*, 526 F.3d at 1084-86 (complaint alleging discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on" an impermissible basis).

### C.    WestCare Defendants

WestCare and its employees contend that they are not subject to § 1983 liability because they did not act "under color of state law," as the statute requires. *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Private defendants are deemed to have acted under color of state law

when they "have conspired or acted in concert with state officials to deprive a person of his civil rights." *Id.* at 567. Nance has sufficiently alleged a conspiracy between WestCare and IDOC—Nance was a thorn in both of their sides, and WestCare's termination of his employment quickly followed IDOC's revocation of his security clearance, creating a plausible inference that the two worked together. *See Tate v. Ancell*, 2009 WL 513751, at *5-6 (S.D. Ill. Mar. 2, 2009).

Nance's § 1983 claims against the individual WestCare defendants are dismissed. The only non-time-barred allegation involving Carr and Smith is that Nance told them that he was emotionally distressed from the May 2008 disturbance with the inmates. Doc. 52 at ¶ 177. That allegation, without more, does not sufficiently tie Carr and Smith to any unconstitutional conduct. Nance alleges that Gubbels and Peters filed false harassment charges against him, but that incident was resolved no later than November 17, 2007, and thus is time-barred for purposes of § 1983. The same holds for Balonick and Shields, whose last bad acts also are alleged to have occurred in November 2007.

### D.     AFSCME Defendants

Like the WestCare Defendants, AFSCME, Bayer, and DiNicola can be liable under § 1983 only via a conspiracy theory. To survive a motion to dismiss, Nance's allegation of a conspiracy must include more than a "bare legal conclusion unsupported by any factual basis." *Leahy v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 912 F.2d 917, 922 (7th Cir. 1990). The complaint does not provide a plausible basis to conclude that AFSCME, Bayer, or DiNicola conspired with IDOC officials against Nance. The § 1983 claims against the AFSCME Defendants accordingly are dismissed.

**III.     Title VII, ADEA, and § 1981 Claims**

The complaint purports to state Title VII and ADEA claims against IDOC, AFSCME, and WestCare, and § 1981 claims against all Defendants. The § 1981 claim reach only race discrimination, not sex or age discrimination. *See Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984). In all other respects, except where noted, the Title VII, ADEA, and § 1981 claims will be analyzed together. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003) ("We employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA, Title VII, or § 1981.").

**A.     Title VII Hostile Work Environment Claim**

Nance claims that he was subject to a hostile work environment based on his race and sex. To state a Title VII hostile work environment claim, Nance must allege: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race or sex; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

The complaint does not sufficiently allege the second element, that the harassment was based on his race or sex. Nance's "allegations of harassment do not conform to the traditional hostile work environment claim in that [he] does not allege that [he] was the target of any racial [or gender] slurs, epithets, or other overtly race-related [or gender-related] behavior." *Ibid*. Although Nance complains of a variety of adverse actions, "[n]one of these incidents are sufficiently connected to race [or sex] so as to satisfy the second element of the hostile environment analysis." *Ibid*. In fact, Nance does not allege treatment that "overtly refer[s] to

race [or sex] at all," *ibid*., and himself attributes much of the animus against him to his refusal to join the union.

Nor does Nance sufficiently allege the third element, severe or pervasive conduct. "A hostile work environment must be both objectively and subjectively offensive." *Id.* at 714. "To determine whether an environment is objectively hostile or offensive, the court must consider all the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." *Ibid*. The complaint alleges in a conclusory fashion that Nance was "threatened, harassed, and intimidated," Doc. 52 at ¶¶ 34, 40, 49, 55, 75, 87, 139, 176, 177, but does not provide even the slightest detail about the character or severity of this harassment. The complaint alleges that Nance was "humiliated" when escorted out of SCC after being charged with sexual harassment, *id*. at ¶ 148, and that he was "emotionally distressed" after the disturbance in his building, *id.* ¶ 177. But the complaint points to no other instances where Nance was humiliated or threatened, and does not allege that his work performance was affected by the alleged harassment. Because Nance's allegations "consist[] of isolated events that were not physically threatening or humiliating," they are insufficient to plead "a workplace permeated with discriminatory ridicule, intimidation, and insult," *Luckie*, 389 F.3d at 714, or one that was "hellish," *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

For these two independent reasons, Nance's Title VII hostile work environment claim is dismissed.

## B.    AFSCME Defendants

"Title VII does not … impose upon a union an affirmative duty to prevent racial harassment or other forms of discrimination in the workplace; that responsibility remains with

the employer who controls the workplace and is in a better position to discipline offenders." *Trapaga v. Cent. States Joint Bd. Local 10*, 2007 WL 1017855, at \*24 (N.D. Ill. Mar. 30, 2007) (citing *EEOC v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 660-61 (7th Cir. 2003)). "Thus, Title VII applies to a union only in its role as the employees' agent, in bargaining and in implementing collective bargaining agreements." *Ibid.* (citing *Maalik v. Int'l Union of Elevator Constructors, Local 2*, 437 F.3d 650, 652 (7th Cir. 2006)); *see also Pipefitters*, 334 F.3d at 659 ("If [a union] discriminates in the performance of its agency function, it violates Title VII, but not otherwise."). To state a Title VII claim against a union, then, a plaintiff must allege: (1) that the employer violated the collective bargaining agreement between the union and the employer with respect to the plaintiff; (2) that the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates that the union's actions were motivated by a prohibited discriminatory animus. *See Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997).

The complaint fails to make the requisite allegations. Nance alleges that the AFSCME Defendants discriminated against him by not allowing him to cross the picket line, by demanding that he join the union and threatening to retaliate against him if he did not join, and by harassing him for his refusal to buckle to the union's demands. The complaint does not allege that WestCare violated the collective bargaining agreement between itself and AFSCME with respect to Nance; indeed, the complaint affirmatively alleges that Nance declined the union's offer of representation. Moreover, the complaint fails to sufficiently allege that AFSCME's actions were motivated by Nance's race or sex. To the contrary, the complaint very clearly claims that AFSCME's alleged animus towards Nance was motivated by his refusal to join and support the union. That dooms not only the Title VII claims against AFSCME, but also the ADEA claims

against AFSCME and the § 1981 claims against AFSCME and the two union officials, which require discrimination based on age and race, respectively.

### C.    IDOC Defendants

IDOC argues that Nance's Title VII and ADEA claims against it should be dismissed because WestCare, not IDOC, was Nance's employer.  A five-factor test governs whether a state agency like IDOC can be deemed the employer of its contractor's employee:

> (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job.

*Hojnacki v. Klein-Acosta*, 285 F.3d 544, 550 (7th Cir. 2002).  At the pleading stage, particularly given the complaint's allegation that WestCare terminated Nance because IDOC revoked Nance's security clearance, the court cannot conclude as a matter of law that IDOC was not Nance's employer for purposes of Title VII and the ADEA.  *See Tamayo*, 526 F.3d at 1089 ("Here, [plaintiff] alleges that the [Illinois Department of Revenue] controlled her salary—the basis of her alleged adverse employment action—as well as a number of other personnel decisions. … These allegations are more than sufficient to avoid dismissal of the IDOR as a defendant at this stage of the proceedings."); *Jensen v. Ill. Dep't of Corr.*, 1999 WL 218561, at *2-3 (N.D. Ill. Apr. 6, 1999) (permitting Title VII claim to proceed against IDOC).  Accordingly, the Title VII and ADEA claims against IDOC can proceed.

The § 1981 claim against IDOC is dismissed because IDOC, as an arm of the State, is immune from damage actions under the statute.  *See Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 641 (7th Cir. 2006).  With respect to the individual IDOC Defendants, the complaint must allege personal involvement to state a § 1981 claim.  *See Behnia v. Shapiro*, 961 F. Supp.

1234, 1237 (N.D. Ill. 1997) ("Individual liability under section 1981 can be found only where the individual himself has participated in the alleged discrimination against the plaintiff.") (citing *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)).  It is possible that Nance's § 1981 claims are subject to a four-year statute of limitations, *see Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004), which would encompass a wider range of alleged conduct than the conduct considered for the § 1983 claims.

Even so, § 1981 claims against Walker, Truitt, Buscher, and Benos still fail, as Nance fails to allege that these individuals "had an intent to discriminate on the basis of race." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).  The allegations against Walker (Doc. 52 at ¶¶ 39, 46, 47, 71, 180, 187, 190), Truitt (*id.* at ¶¶ 74-85, 189), and Benos (*id.* at ¶¶ 180, 187, 190) make no reference to race whatsoever.  The same is true of Buscher (*id.* at ¶¶ 43, 44, 46, 187, 190), with one exception: Nance alleges that Buscher "conspired to keep [Nance] from crossing the picket lines … because of his race, sex, age, and retaliating against [Nance]." *Id.* at ¶ 188.  That conclusory reference to race, however, is insufficient to plausibly suggest that Buscher was motivated by Nance's race.  *See Johnson v. Vill. of Bellwood*, 2010 WL 2653335, at *2 (N.D. Ill. July 1, 2010) (conclusory allegation that plaintiffs' arrest "was motivated by race" was "insufficient to plausibly suggest that Defendants were motivated in any way by Plaintiffs' race"); *Gardner v. City of Waukegan*, 1999 WL 410009, at *7-8 (N.D. Ill. June 4, 1999) ("[Plaintiff's] bald assertion that the defendants prevented him from making and enforcing contracts like a [sic] white citizens is, without more, essentially a request to infer discriminatory intent from the fact that [Plaintiff] is African-American.  The Seventh Circuit, however, explicitly prohibits such an inference.") (citing *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985)).  Likewise, while the allegations against Rothwell are sufficient to support a claim that he

issued the stop order in retaliation for Nance's First Amendment activities, they do not raise a plausible inference of race discrimination. *See* Doc. 52 at ¶¶ 42, 175, 179, 210-211.

### D.     WestCare Defendants

WestCare does not seek dismissal of the Title VII, ADEA, and § 1981 claims against it. The individual WestCare employees do seek dismissal of the § 1981 claims against them. With the exception of Balonick, Nance fails to plead that the WestCare employees had an intent to discriminate against him based on race. Most of the complaint's allegations against those defendants do not mention race. *See* Doc. 52 at ¶¶ 72, 93, 104, 152, 162, 191-93 (Shields); *id.* at ¶¶ 107-14, 120-27, 152, 177, 191-92 (Carr); *id.* at ¶¶ 98, 104, 177, 191, 192 (Smith); *id.* at ¶¶ 144, 149-59, 192, 203 (Peters); *id.* at ¶¶ 114, 132-44, 149-64, 192, 203 (Gubbels). At one point, the complaint alleges in a conclusory fashion that each of those defendants took some action against Nance "because of his race, sex, age, and retaliating against the Plaintiff for filing grievances," *id.* at ¶¶ 191-93, but those allegations are insufficient to state a § 1981 claim. *See Vill. of Bellwood*, 2010 WL 2653335, at *2, *Gardner*, 1999 WL 410009, at *7-8.

Balonick is alleged to declined to promote Nance because he filed grievances (some alleging race discrimination) in the past and to have treated Nance differently than a specific employee of another race. Doc. 52 at ¶¶ 120-27, 143. Thus, Nance has stated a § 1981 claim against Balonick.

## IV.     Equal Pay Act

To state a claim under the Equal Pay Act, a plaintiff must allege: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 912-13 (7th Cir.

2002).  The complaint concedes that Nance was paid the same as similarly situated employees during his tenure at Westcare, Doc. 52 at ¶ 228, but purports to base his Equal Pay Act claims based on Nance's loss of *future* income and employment due to his termination.  *Id*. at ¶¶ 232-34.  The WestCare Defendants argued that the Equal Pay Act focuses on wages actually paid for work an employee performs, and thus does not recognize a claim for post-termination pay.  *See* 29 U.S.C. § 206(d)(1) (with certain exceptions, prohibiting discrimination "on the basis of sex by *paying* wages to employees in such establishment at a rate less than the rate at which he *pays* wages to employees of the opposite sex in such establishment for *equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which *are performed* under similar working conditions").  The argument is a valid one, so much so that Nance did not bother to respond, thus forfeiting the claim in any event.  *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039 (7th Cir. 1999); *Fifth Third Bank (Chicago) v. Stocks*, 265 F.R.D. 316, 318-19 (N.D. Ill. 2010).  Accordingly, the Equal Pay Act claims are dismissed.

## V.     State Law Claims

Finally, the complaint purports to bring a state law civil conspiracy against all Defendants, and intentional infliction of emotional distress ("IIED"), negligence, and strict liability claims against IDOC, AFSCME, and WestCare.  The statute of limitations in Illinois for IIED, negligence, and strict liability claims is two years.  *See* 735 ILCS § 5/13-202; *O'Leary v. Kaupas*, 2010 WL 4177264, at *3 (N.D. Ill. Oct. 19, 2010) ("Generally, IIED claims under Illinois law are subject to a two-year statute of limitations."); *Moseley-Gorbett v. NBTY, Inc.*, 2007 WL 1830841, at *1 (C.D. Ill. June 22, 2007) ("The statute of limitations in Illinois for negligence and strict liability claims is two years.").  Those claims are dismissed insofar as they arise from alleged actions prior to December 17, 2007.

In any event, Nance's state law claims are preempted in their entirety by the Illinois Human Rights Act ("IHRA"). The IHRA grants the Illinois Human Rights Commission exclusive jurisdiction over state law civil rights violations in Illinois. *See* 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). The IHRA preempts common-law tort claims in some circumstances. *See Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. 1997); *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994). The preemption inquiry turns "not [on] whether the facts that support [plaintiff's tort claim] could also have supported a discrimination claim, but instead [on] whether [plaintiff] can prove the elements of [the tort claim] independent of legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

Nance's state law claims are "inextricably linked" with the civil rights violations alleged in the complaint. *Id.* at 602. The civil conspiracy claim repeatedly alleges that the conspiracy is rooted in race, sex, and age discrimination. Doc. 52 at ¶¶ 186, 188, 191-194, 196; *see Lopez v. Children's Mem. Hosp.*, 2002 WL 31898188, at *7 (N.D. Ill. Dec. 31, 2002) (civil conspiracy claim preempted by the IHRA where complaint alleged that the civil conspiracy "was motivated by Plaintiff's age and race"). The same holds for Nance's IIED, negligence and strict liability claims. Doc. 52 at ¶¶ 266-77; *see Sanglap v. LaSalle Bank FSB*, 345 F.3d 515, 519-20 (7th Cir. 2003). Because the IHRA "furnished the legal duty that the defendant[s are] alleged to have breached," Nance's claims are "in essence claims of a 'civil rights violation' and, accordingly, [can] only be brought before the Commission." *Maksimovic*, 687 N.E.2d at 23. Nance's state law claims accordingly are dismissed.

**VI.    WestCare's Motion to Strike**

WestCare has moved under Rule 12(f) to strike Paragraphs 45, 47, 65, 86, and 227 of complaint, as well as Exhibits 4-6, which relate to Nance's unemployment compensation proceedings before the Illinois Department of Employment Security.  Because the court cannot foreclose the possibility that those allegations and materials might have some bearing on this case, the motion to strike is denied.

## Conclusion

The following claims in the second amended complaint survive dismissal: (1) the Title VII claims against IDOC and WestCare; (2) the ADEA claims against IDOC and WestCare; (3) the § 1981 claims against WestCare and Balonick; and (4) the § 1983 claims against Rothwell and WestCare.  Because this is Nance's third attempt to plead his claims, and in light of the warning issued by Judge Hibbler in dismissing the first amended complaint, all remaining claims are dismissed with prejudice.  The following defendants are dismissed with prejudice as party defendants: AFSCME, Bayer, Benos, Blagojevich, Buscher, Carr, DiNicola, Gubbels, Peters, Shields, Smith, Truitt, and Walker.  The remaining defendants shall answer the surviving portions of the second amended complaint by May 31, 2011.

May 9, 2011                                 _____
                                                          United States District Judge