Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Gary Feinerman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7733 | **DATE** | 4/12/2012 |
| **CASE TITLE** | Nance vs. Rothwell, et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's objections [174] to the Magistrate Judge's Report and Recommendation [170] are overruled. Accordingly, consistent with the Report and Recommendation, Plaintiff's motion to compel parties to agree to mutual settlement terms [149] is denied and State Defendants' motion to enforce settlement agreement [158] is granted. The material settlement terms are set forth in the Magistrate Judge's order [169] and Report and Recommendation (Doc. 170 at 9); those terms bind the parties regardless of whether Plaintiff executes the draft settlement agreement tendered by State Defendants' counsel. Because all claims against all parties have been resolved, this civil case is closed.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    At a settlement conference over which Magistrate Judge Valdez presided on September 28, 2011, the remaining parties reached agreement on material settlement terms. Docs. 142, 143. Plaintiff Dr. Fred L. Nance, Jr., had no trouble memorializing in writing his settlement with Defendants Westcare Foundation and Leslie Balonick. Docs. 144, 147; Doc. 149 at ¶ 2. Problems arose, however, with papering Nance's settlement with Defendants Illinois Department of Corrections and Rothwell ("State Defendants").

    Nance filed a motion to compel the State Defendants to execute a written settlement agreement that: (1) included a non-disparagement clause; (2) set a conclusive date for the State Defendants to make the settlement payment; and (3) reinstated Nance's security clearance. Doc. 149. Only the non-disparagement clause remains in issue, so the other two terms will not be discussed further. The motion noted that Judge Valdez "could not convince defendants to include" a non-disparagement clause in a written settlement agreement, and expressed the hope that Judge Feinerman "may be able to convince the defendants to include" that term. *Id*. at ¶¶ 10-11. The State Defendants responded that the non-disparagement clause requested by Nance was not among the terms agreed to before Judge Valdez. Doc. 152. In reply, Nance did not contend that the State Defendants had agreed to a non-disparagement clause. Doc. 155.

| | Courtroom Deputy Initials: | JD |
|---|---|---|

## STATEMENT

Because Judge Valdez was ideally situated to decide what Nance and the State Defendants had agreed to at the September 28 settlement conference, Judge Feinerman referred to Judge Valdez Nance's motion and also the State Defendants' forthcoming motion to enforce the settlement they say was reached. Docs. 156, 157. The State Defendants' motion argued, among other things, that the State Defendants did not negotiate or approve a non-disparagement clause. Doc. 158 at 5. In support, the State Defendants submitted a transcript of the portion of the September 28 settlement conference where Judge Valdez described the material settlement terms and obtained the parties' agreement that those indeed were the terms. Doc. 166 at 3-12. Nance's response argued, among other things, that "as the transcript of September 28, 2011 demonstrates, defendants' attorney agreed to a non-disparagement clause as all parties agreed." Doc. 160 at ¶ 10. On that point, Nance added: "The defendants' attorneys agreed to a non-disparagement clause during the 'private' settlement agreement in Judge Valdez's chambers. After consulting with the 'real' people who make decisions in their office, defendants' attorneys decided they could not uphold their part of the bargain with a non-disparagement clause, suggesting after the settlement conference they could not hold 'their' defendants' feet to the fire and tell them they could not discuss the case or disparage Dr. Nance in any future endeavors as he engages in with or through others with IDOC." *Id*. at ¶ 23. The State Defendants did not file a reply in support of their motion to enforce.

Thus, as presented to Judge Valdez, the parties' dispute regarding the non-disparagement clause turned on one issue and one issue only—whether the State Defendants agreed to a non-disparagement clause at the September 28 settlement conference. As noted above, having presided over the settlement conference, Judge Valdez was ideally situated to resolve that dispute. In her Report and Recommendation, Judge Valdez reviewed the September 28 transcript and ruled that while Dr. Nance had agreed to a non-disparagement clause that bound *him*, the State Defendants had not agreed to a non-disparagement clause that bound *them*. Doc. 170 at 7-8. This meant, according to Judge Valdez, that the settlement agreement did not include a mutual non-disparagement clause. And based on settled precedents governing the enforcement of oral settlement agreements, Judge Valdez held that the agreement actually reached by Nance and the State Defendants should be enforced. *Id*. at 9.

Nance filed objections to the Report and Recommendation; the objections are limited to the subject of the non-disparagement clause. Docs. 174, 174-2. Nance reiterates his contention that the State Defendants agreed at the September 28 settlement conference to include a mutual non-disparagement clause in the settlement agreement. Doc. 174 at ¶¶ 15-27, 39-40; Doc. 174-2 at 4, 6-7; Doc. 179 at 4-5, 8. And he suggests that when Judge Valdez recited the material settlement terms on the record at the conclusion of the September 28 settlement conference, she neglected to include the mutual non-disparagement clause. Doc. 174 at ¶¶ 42-45; Doc. 174-2 at 10-14. These contentions are rejected. The record, particularly the transcript of the September 28 settlement conference, supports Judge Valdez's conclusion in her Report and Recommendation that the material settlement terms did not include a mutual non-disparagement clause. And having signaled his agreement to those settlement terms, Nance entered into a oral settlement agreement that the State Defendants are entitled to enforce. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506-07 (7th Cir. 2007).

## STATEMENT

Nance's objections to the Report and Recommendation make two other arguments. The first is that his agreement to the settlement terms articulated by Judge Valdez on September 28 was not knowing and voluntary and also was the product of coercion. Doc. 174-2 at 4-12; Doc. 179 at 8-9. The second is that the settlement was induced by fraud. Doc. 174-2 at 14; Doc. 179 at 2-4, 7-9. Nance did not make either of these arguments in the briefs submitted to Judge Valdez. Accordingly, Nance may not now advance those arguments in objecting to Judge Valdez's Report and Recommendation. *See United States v. Moore*, 375 F.3d 580, 584 n.2 (7th Cir. 2004); *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *Cent. States v. Sara Lee Bakery Grp.*, 2011 WL 862040, at *2 (N.D. Ill. Mar. 10, 2011). Nance's objections briefly mention the "waiting period" available to him under the Age Discrimination in Employment Act, *see* 29 U.S.C. § 626(f), but the objections do not argue that the motion to enforce should be denied on "waiting period" grounds. Doc. 174 at ¶¶ 28-35. Even if Nance's objections had made such an argument, the argument would be forfeited because Nance did not present it in the briefs submitted to Judge Valdez.

For these reasons, Nance's objections to the Report and Recommendation are overruled, Nance's motion to compel the State Defendants to enter into a written settlement agreement with a mutual non-disparagement clause is denied, and the State Defendants' motion to enforce the settlement agreement is granted. That said, if State Defendants do not make the required settlement payment by 10/12/2012, Nance may file a motion to reinstate the case and vacate the settlement agreement.